AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Blue Apple I-Phone 12 Pro Max<br>Case Number: AND-24-03-000050<br>("Target Device 1") | Case No. '24 MJ1795 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of CBP Enforcement Officer Diana I. Lewenthal incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

CBP Enforcement Officer Diana I. Lewenthal
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: May 8, 2024

*Judge's signature*

City and state: San Diego, CA

Hon. Michelle M. Pettit., U.S. MAGISTRATE JUDGE
*Printed name and title*

# **ATTACHMENT A-1**
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**            Blue Apple I-Phone 12 Pro Max
                    Case Number:  AND-24-03-000050
                    **(Target Device #1)**



The **Target Device** is currently in the possession of the Department of Homeland Security, Calexico, California Customs and Border Protection Port of Entry, 200 East 1st Street, Calexico, California 92251, and located in the Criminal Enforcement Unit evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of February 23, 2024, up to and including March 25, 2024:

a.  tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.  tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.  tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.  tending to identify the user of, or persons with control over or access to, the **Target Devices**;

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, United States Customs and Border Protection Officer, having been duly sworn, depose and state as follows Diana I. Lewenthal, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic devices (collectively referred to as "**Target Devices**"):

**A-1:**     Blue Apple I-Phone 12 Pro Max
Case Number:  AND-24-03-000050
("**Target Device 1**")

**A-2:**     Black Samsung Galaxy Fold Cellular Phone
Case Number:  AND-24-03-000050
("**Target Device 2**")

**A-3:**     Gray Apple I-Phone
Case Number:  AND-24-03-000050
("**Target Device 3**")

as further described in Attachment A-1, A-2 and A-3, and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Mark ROMERO for transportation of illegal alien Cesar Ivan RIOS-Tapia, the "Material Witness" in violation of Title 8, United States Code, Section 1324 within the Southern District of California. The **Target Devices** were seized from Mark ROMERO and Cesar Ivan RIOS-Tapia, the Material Witness on or about March 25, 2024, incident to the arrest

1

of Mark ROMERO and Cesar Ivan RIOS-Tapia, the Material Witness. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, 200 East 1st Street, Calexico, California 92251, located in the Criminal Enforcement Unit evidence room of that office.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by U.S. Customs and Border Protection since 2002 and am currently assigned to the Calexico Enforcement Unit. I graduated from the CBP Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for twenty-two years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and

harboring of illegal aliens into and within the United States; and the utilization of illegally obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a CBP Officer, I have participated in the investigation of several cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, particularly those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example,

drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States;
   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;
   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;
   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;
   e. tending to identify the user of, or persons with control over or access to, the **Target Device**(s); and/or
   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On March 24, 2024, at approximately 8:20 P.M., Mark ROMERO (ROMERO) applied for admission into the United States from Mexico via the Andrade, California Port of Entry Vehicle lanes in a red Toyota Rav4. ROMERO was accompanied by a male passenger later identified as Cesar Ivan RIOS-Tapia (RIOS).

12. Upon inspection before a CBP Officer, ROMERO presented an Arizona Driver License bearing his name and photograph as his entry document and an Arizona Identification Card bearing the name F.J.S.S., as an entry document for RIOS. The CBP

5

Officer asked RIOS where he was born and RIOS remained silent, while looking at ROMERO. ROMERO further stated RIOS just had a dental procedure and was unable to speak.

13. The CBP Officer attempted to speak to RIOS a second time and asked RIOS when the last time was that he crossed the international border. RIOS stated approximately 3 months ago, but the CBP Officer noticed RIOS did not have any crossing history within the last 6 months.

14. Based on his observations, the officer referred the vehicle, ROMERO and RIOS to the vehicle secondary lot for further inspection.

15. In the vehicle secondary lot, the CBP Officer conducted an interview of RIOS, but ROMERO intervened stating RIOS could not talk much because he just had a dental procedure. The CBP Officer questioned RIOS about his travel history and prior immigration records, but he was unable to answer.

16. At approximately 1:23 A.M., during a video-recorded interview, ROMERO was advised of his Miranda rights and elected to make a statement. ROMERO stated he had no knowledge RIOS was undocumented. ROMERO stated RIOS had shown him an Arizona Identification card as his entry document.

17. During a video-recorded interview, RIOS admitted to being a citizen of Mexico attempting to enter the United States illegally by using a document that does not belong to him. RIOS stated his sister made the smuggling arrangements with an unknown smuggler from TikTok to be smuggled into the United States. RIOS stated his family was going to pay a smuggling fee of $10,000.00 USD. RIOS stated he received instructions to travel to Mexicali, Baja California, Mexico where he would be picked up by the unknown smuggler.

18. RIOS stated he arrived in Mexicali, Baja California, Mexico on Thursday, March 21, 2024, and stayed at a hotel to await further instructions. RIOS was instructed

to go to Carl's Jr Restaurant to wait to be picked up. RIOS heard his name was being called by ROMERO, who asked RIOS to get into the vehicle.

19. RIOS stated ROMERO provided him with an Arizona Identification card and instructed him to memorize the information. RIOS also stated that ROMERO advised him not to speak to the CBP Officer and let ROMERO handle the conversation. If successful, RIOS was to travel to Phoenix, Arizona to illegally reside with his family and work.

20. During a search incident to arrest of Mark ROMERO and Cesar Ivan RIOS-Tapia, the Material Witnesses, three cellular phones were found. During interviews, CBP Officer Murillo observed a Blue I-Phone and a Black Samsung Galaxy Z Fold 2 Cellphone in Mark ROMERO's property (Target Device #1 and #2). CBP Officer Murillo observed a Gray I-Phone Cellphone in Cesar Ivan RIOS-Tapia's property (Target Device #3). All claimed ownership of their cellphones and they were seized as evidence.

21. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**(s). Considering the above facts and my experience and training, there is probable cause to believe that Defendant was using the **Target Device**(s) to communicate with others to further the smuggling of illegal aliens into the United States. Further, in my training and experience, alien smugglers may be involved in the planning and coordination of transporting and smuggling events in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the aliens. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and

months longer than they claim. Accordingly, I request permission to search the **Target Device(s)** for data beginning on February 23, 2024, up to and including March 25, 2024.

## METHODOLOGY

22. It is not possible to determine, merely by knowing the cellular telephones make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be minicomputers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will

employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

23. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//
//
//
//
//
//
//
//
//
//
//
//
//

## CONCLUSION

24. Based on the facts and circumstances described above, I believe that probable cause exists to conclude that Mark ROMERO and Cesar Ivan RIOS-Tapia used the **Target Devices** to facilitate the offense of alien smuggling. The **Target Devices** likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by Mark ROMERO and Cesar Ivan RIOS-Tapia, the Material Witnesses, and others continues to exist on the **Target Devices**. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Diana I. Lewenthal, CBP Enforcement Officer
U.S. Customs and Border Protection

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 8th day of May, 2024.

_____
HON. MICHELLE M. PETTIT
UNITED STATES MAGISTRATE JUDGE

# **ATTACHMENT A-1**
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**     Blue Apple I-Phone 12 Pro Max
            Case Number:  AND-24-03-000050
            **(Target Device #1)**



The **Target Device** is currently in the possession of the Department of Homeland Security, Calexico, California Customs and Border Protection Port of Entry, 200 East 1st Street, Calexico, California 92251, and located in the Criminal Enforcement Unit evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of February 23, 2024, up to and including March 25, 2024:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.